# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

| | |
|---|---|
| **SHERIDAN HEALTHCORP, INC.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| vs. § | |
| § | |
| **AETNA HEALTH INC., AETNA LIFE** § | NO. _____ |
| **INSURANCE COMPANY, COVENTRY** § | |
| **HEALTH AND LIFE INSURANCE** § | |
| **COMPANY, COVENTRY HEALTH** § | |
| **CARE OF FLORIDA, INC., COVENTRY** § | |
| **HEALTH PLAN OF FLORIDA, INC., and** § | |
| **FIRST HEALTH LIFE AND HEALTH** § | |
| **INSURANCE COMPANY,** § | |
| § | |
| **Defendants.** § | |

## SECOND NOTICE OF REMOVAL OF CIVIL ACTION

Defendants Aetna Health Inc., Aetna Life Insurance Company (collectively, "Aetna"), Coventry Health and Life Insurance Company, Coventry Health Care of Florida, Inc., Coventry Health Plan of Florida, Inc. (collectively, "Coventry"), and First Health Life and Health Insurance Company ("First Health"), all collectively referred to herein as "Defendants," file this Second Notice of Removal of Civil Action brought by Plaintiff Sheridan Healthcorp, Inc. ("Sheridan").

### INTRODUCTION

Defendants are removing this case because Sheridan's third set of lawyers have confirmed within the last 30 days that Sheridan is seeking damages for denied medical claims pursuant to extra-contractual causes of action that are not independent of ERISA under controlling Eleventh Circuit precedent. In preparing this case for its December 3, 2018 trial setting, the state court judge (the Honorable Chief Judge Jack Tuter) directed Sheridan at a

hearing on November 6th to remove any preempted ERISA medical claims that remained in Sheridan's damages model, which Sheridan has since refused to do. Tellingly, when Defendants removed this case the first time, in 2015, after receiving a preliminary disclosure of claims at issue that included denied claims, Sheridan moved to remand on the basis that it "seeks no recovery against Aetna for denied care, coverage disputes or benefit denials" and that Sheridan would "specifically exclud[e]" all such claims from the action. Case No. 0:15-cv-62590-BB, CM/ECF No. 36 at 3. Sheridan repeatedly represented to the Court that it "seeks no recovery against Aetna for denied care, coverage disputes or benefit denials." Case No. 0:15-cv-62590-BB, CM/ECF No. 36 at 2, 3, 6, 10, 11, 13, 14. Sheridan also filed an affidavit of its general counsel to get the case remanded to state court, which has since been shown to contain material untrue statements.[1] The Court granted Sheridan's motion to remand on the basis of these affirmative representations that federal jurisdiction did not exist, and because this case involved only a contract claim. Sheridan's representations were false.

Now, after three years of litigating in state court based on Sheridan's representations that its case did not include denied (only allegedly underpaid) claims, Sheridan has proffered recent testimony from its expert revealing that Defendants were right the first time—this case includes denied claims pursuant to non-contract claims and thus implicates ERISA as set forth in Sheridan's damages model. Defendants advised Sheridan that Defendants' expert had identified more than 5,400 claim lines in Sheridan's damages model where medical benefits were denied

---

[1] *Compare* Affidavit of Jillian E. Marcus in Support of Plaintiff's Motion to Remand at Case No. 0:15-cv-62590-BB, CM/ECF No. 36-3, *with* Videotaped Deposition of Jillian E. Marcus (June 5, 2018) at 238:20 - 240:3. Because the deposition of Ms. Marcus was designated confidential in the state court proceeding, Defendants will move to file the transcript under seal following the procedures prescribed by the Local Rules and Sections 5A, 5K, 9A-D, and 10B, as applicable, of the CM/ECF Administrative Procedures.

under the terms of ERISA[2] plans after termination of the parties' contracts.  Recognizing that the inclusion of these denied claims provided a basis for federal jurisdiction, on November 6, the state court judge instructed Sheridan to promptly remove any denied claims, or to advise within 5 days that it would not do so.  On November 11, despite its prior promises to this Court, Sheridan advised Aetna in writing that it ***is refusing to exclude all denied claims*** from its damages model.  Sheridan has since provided a spreadsheet of claims showing that Sheridan has removed only 36 of the more than 5,400 post-termination denied claim lines from its damages model.  In other words, contrary to its prior representations, Sheridan is still seeking recovery on denied claims.

Sheridan presumably believes it can break its promises with impunity because it has advanced other arguments that it believes deprive this Court of subject matter jurisdiction under ERISA.  But Sheridan's arguments that it is not suing as an assignee of benefits, and seeks relief only under alleged independent contractual agreements with Defendants, are unavailing and untrue.  Sheridan submitted claims as an assignee and, in addition to the contract and quasi-contract claims in its Complaint, ***Sheridan is also seeking to recover damages under an unjust enrichment theory*** that is not based on any contract.  Simply put, because Sheridan is seeking recovery, in part, on denied claims, ERISA complete preemption raises a federal question under Eleventh Circuit law.  *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 (11th Cir. 2009) (holding that provider's breach of contract and unjust enrichment claims were completely preempted, because the provider complained, "at least in part, about denials of benefits").

Moreover, Sheridan's misrepresentations to the Court on the first removal that it was not seeking recovery on denied claims and would exclude any such claims from the action entitle

---

[2] The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461.

Defendants to remove a second time. *See TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1312-13 (M.D. Ala. 2002) (allowing second notice of removal and denying remand, where the plaintiff's deposition testimony after remand contradicted the plaintiff's affidavit on which the district court had relied in granting motion to remand on first removal). Despite promising to do so, Sheridan has adamantly refused to remove all of the denied claims, including those exclusively governed by federal law. Defendants therefore file this Second Notice of Removal.

## GROUNDS

The grounds in support of this Second Notice of Removal are as follows:

1. **The State Court Action, Parties and Pleadings.** Sheridan filed a civil action against Defendants, on or about May 29, 2015, in the 17th Judicial Circuit for Broward County, Florida, under Case No. 15-9394 (07) (the "State Court Action"). A true and correct copy of Sheridan's Complaint without exhibits (the "Complaint") is attached hereto as Attachment 1.[3] Sheridan's Complaint did not identify the medical claims forming the basis of its pleaded causes of action.

2. Defendants filed their Answer and Affirmative Defenses in the State Court Action on July 17, 2015. A true and correct copy of Defendants' Answer and Affirmative Defenses is attached hereto as Attachment 2.

3. Defendants filed a Notice of Removal in this Court on December 10, 2015. Case No. 0:15-cv-62590-BB, CM/ECF No. 1. As noted above, Defendants removed the case at that

---

[3] The state-court complaint is being filed as an attachment to this notice of removal without exhibits to ensure that it meets CM/ECF filing requirements regarding file size and because the original exhibits to the complaint were filed under seal. The complaint, as filed in the state court, including all exhibits, is provided with the state court record being filed contemporaneously with this notice and consistent with confidentiality protections. The remainder of the state court file will be electronically filed consistent with the case filing requirements of the U.S. District Court, Southern District of Florida.

time because they received a preliminary disclosure from Sheridan of the medical claims at issue, which disclosure included claims denied for lack of coverage and thus implicated ERISA.

4. Sheridan filed a Motion to Remand (the "First Motion to Remand"), which the Court granted on February 9, 2016 (the "Remand Order"). *Id.* CM/ECF No. 45. As also noted above, the Court accepted the representations by Sheridan that its case did not include any denied claims, only allegedly underpaid claims, and that Sheridan would remove from the scope of its case any denied claims brought to its attention.

5. This case has proceeded in the 17th Judicial Circuit for Broward County, Florida since that time. Subsequent proceedings have now revealed a new basis for removal.

6. **This Notice is Timely Pursuant to 28 U.S.C. § 1446(b)(3)**. This Second Notice of Removal of Civil Action is timely pursuant to 28 U.S.C. § 1446(b)(3) because the State Court Action is being removed prior to the expiration of the statutorily allowed thirty-day period after Defendants received a copy of an amended pleading, motion, or other paper from which it was first ascertained that this case is one which is or has become removable.[4]

7. Specifically, on October 29, 2018, Sheridan's counsel sent a letter to Defendants' counsel addressing the scope of damages sought by Sheridan, as articulated in an expert report (the "October 29 Letter"). A true and correct copy of the October 29 Letter is attached hereto as Attachment 3.[5] In the October 29 Letter, Sheridan's counsel admitted that Sheridan's claims for

---

[4] As this case involves federal question jurisdiction, not diversity, the one-year bar to removal under 28 U.S.C. § 1446(c)(1) is irrelevant. If the bar was applicable, however, Sheridan's actions would easily meet the "bad faith" standard justifying removal after one year. *See, e.g., Hill v. Allianz Life Ins. Co. of N. Am.*, 51 F. Supp. 3d 1277, 1281 (M.D. Fla. 2014) (recognizing that a plaintiff's claims are in bad faith if it attempts "to disguise the existence of the removability of the case").

[5] Defendants' have subsequently amended their answer in state court. Defendants Second Amended Answer and Affirmative Defenses is the live pleading, which is attached hereto as Attachment 4.

damages **include** medical claims for which Defendants denied coverage for lack of medical necessity or other reasons:

> Sheridan will continue to seek its damages as outlined in Mr. Bouchner's expert report and testimony . . . . Any **disputed claims in the pre-termination dataset** dealing with the services rendered under the applicable HBP Agreements **were included by Sheridan only if they were not paid by Defendants** after Sheridan complied with the applicable dispute resolution and appeals provisions under those HBP Agreements.

(emphasis added). Accordingly, Sheridan's counsel admitted that Sheridan is seeking damages based upon claims that "were not paid"—i.e., were denied—by Defendants prior to the termination of the parties' agreements.

8. Moreover, the October 29 Letter is incorrect in its assertion that these denied claims all pre-date termination of the parties' contracts (the "Pre-Termination Denied Claims"). As Defendants have previously advised Sheridan, Defendants' expert has identified more than 5,400 denied claim lines in Sheridan's dataset that **post-date** termination of the parties' contracts (the "Post-Termination Denied Claims").

9. The admission in Sheridan's October 29 Letter that Sheridan is seeking damages for denied claims is directly contrary to the allegations Sheridan made in its Complaint, and to the representations it made to this Court in connection with the first removal and remand of this action. In the First Motion to Remand, for example, Sheridan repeatedly represented to the Court that this dispute involved only "rate of payment" issues, i.e., Sheridan represented that it was **not** asserting claims based upon Defendants' **denial** of benefits (or "right to payment" issues). Sheridan's representations included:

Sheridan filed this state law action . . . for breaches of contract resulting from Defendants' failures to pay Sheridan the appropriate "rate of payment" for medically necessary, covered health care services.

Sheridan's asserted claims concern only the rate of payment owed by Defendants. Sheridan seeks no recovery against Aetna for denied care, coverage disputes or benefit denials and specifically excludes from its state court action any issues involving these "right to payment" disputes.

Sheridan is neither asserting claims for, or seeking damages for "denied care."

Sheridan's Complaint unambiguously asserts state law claims against Defendants based upon a dispute over payment rates . . . .

Each of Sheridan's discovery responses likewise provide confirmation of the nature of the claims asserted in this litigation as limited to "rate of payment" disputes.

[O]nce identified, any such [denied] claims will be removed as Sheridan has made clear the asserted claims against Defendants concern issues of the "rate of payment" and not the "right of payment."

[E]very response from Sheridan confirms it seeks only independent "rate of payment" state law claims and not "denied care" . . . . Sheridan disclaimed any cause of action based upon denied health care . . . .

[T]he only issue raised by Sheridan's Complaint involves the correct rate of payment issued by Defendants . . . .

Sheridan has agreed that if such [denied] claims do mistakenly exist within its preliminary discovery, they will be removed as they are plainly intended to be excluded.

Here, as detailed *supra*, pp. 4-5, Sheridan's claims concern **only** the **rate of payment** Defendants were obligated to pay for authorized, covered services.

Sheridan is not seeking damages based on denials of care under ERISA (or FEHBA) plans and, as explained, will remove any such claims identified from its final damages.

Sheridan will be removing any alleged spreadsheet entries that involve denied care or FEHBA plans in future discovery

-7-

>production once identified, thus negating whatever nascent jurisdiction could exist.

Case No. 0:15-cv-62590-BB, CM/ECF No. 36 at 2, 3, 4, 6, 10, 11, 13, 14, 20 (emphasis in original).

10. Likewise, in its Reply in Support of its First Motion to Remand, Sheridan continued to represent that it was not asserting claims based upon Defendants' denial of benefits:

>Sheridan seeks <u>only</u> damages for <u>covered, authorized and paid (albeit underpaid) health care claims</u> and expressly excludes claims for benefits coverage or denied care.
>
>Sheridan's Complaint . . . involves <u>only non-preempted state law claims involving the "rate of payment," not denied care</u>.
>
>[T]here is not a single allegation within Sheridan's Complaint that discusses, alleges, or implies that Sheridan seeks damages for the denial of health care benefits.
>
>Sheridan need not disclaim causes of action it does not bring, does not allege factually anywhere within its Complaint, and is not seeking damages for: namely, denied care.

Case No. 0:15-cv-62590-BB, CM/ECF No. 42 at 2, 3, 5 (underlining in original).

11. When the Court granted Sheridan's First Motion to Remand, it expressly based its Remand Order upon Sheridan's representations that it was not asserting claims based upon Defendants' denial of benefits, but only upon the rate of payment provided for those claims. Remand Order, Case No. 0:15-cv-62590-BB, CM/ECF No. 45 at pp. 8-10. The Court expressly noted that "there is not a single allegation within Sheridan's Complaint that discusses, alleges, or implies that Sheridan seeks damages for the denial of health care benefits." *Id.* at pp. 9-10.

12. The October 29 Letter from Sheridan's counsel makes clear that, contrary to Sheridan's representations to the Court, Sheridan ***is in fact*** seeking damages based upon Defendants' denial of claims submitted by Sheridan.

13. On November 6, 2018, the 17th Judicial Circuit for Broward County, Florida, held a hearing in this matter. A true and correct copy of the Hearing Transcript is attached hereto as Attachment 5. When it was brought to the attention of Chief Judge Jack Tuter that Sheridan's case actually included the denied claims Sheridan had disclaimed in obtaining a remand, Chief Judge Tuter instructed Sheridan to promptly remove any denied claims, or to advise by November 12, 2018, that it would not do so:

> [Defendants' Counsel]: . . . so the claims that are based upon coverage denials under the ERISA plan should be tried in federal court or not at all, and this is just another issue I wanted to bring up that must be sorted out before the case goes forward.
>
> THE COURT: How many claims are we talking about?
>
> [Defendants' Counsel]: Somewhere between 5,000 and 7,000 claims.
>
> THE COURT: You guys got to get this resolved, Todd [Sheridan's Counsel].
>
> [Sheridan's Counsel]: I think he's mischaracterizing the testimony significantly from our expert, but —
>
> THE COURT: Well, if there are claims that the federal court or some other judge or some other — whatever administrative law judge has said are disallowed, I don't know how in the world you could bring them in this case and I don't know why you would want to because it would just —
>
> [Sheridan's Counsel]: That's correct, your Honor.
>
> THE COURT: — clutter up the evidence.
>
> [Sheridan's Counsel]: That's correct. We're aware of the evidence and we're aware of what we framed in our pleadings and we're aware of what's relevant to this Court and that's the only claims that will be tried.
>
> THE COURT: All right. Well, I think you ought to let him know that you're not — if you don't intend to pursue those disputed claims to let him know in five days by letter or stipulation or something so that we don't let that issue drag on on [sic] the eve of trial.

[Sheridan's Counsel]:	Understood.

Attachment 5 at 19:22–21:5.

14. On November 11, 2018, Sheridan's counsel sent a letter to Defendants' counsel regarding the state court's November 6 rulings (the "November 11 Letter"). A true and correct copy of the November 11 Letter is attached hereto as Attachment 6. In the November 11 Letter, Sheridan's counsel admitted that **denied claims are and *will remain* part of its damage model**.

15. Sheridan's counsel claimed in the November 11 Letter that "we are working with our experts to identify certain unpaid claims that we will be removing from our damages model. We do not anticipate that these updates will result in a material change to the conclusions reached by our expert." Sheridan's counsel did **not**, however, commit to removing **all** denied claims from its damages model.

16. On November 12, 2018, Sheridan provided Defendants with an updated spreadsheet of claims in its damages model. The spreadsheet reflects that Sheridan has excluded only 36 of the more than 5,400 Post-Termination Denied Claims (as well as removing 400 Pre-Termination Denied Claims). In other words, despite its representations to the Court to obtain remand from Defendants' first removal that it would exclude **all** denied claims from its damages model, Sheridan has only excluded **some** of the denied claims.

17. Because Sheridan is challenging the denial of benefits under federally regulated benefit plans, Sheridan's claims for damages arising from such plans and benefits are completely preempted by federal law and its case is thus removable to federal court. 28 U.S.C. § 1446(b).

18. **ERISA Complete Preemption Raises a Federal Question**. Sheridan's Complaint necessarily raises a federal claim in character because ERISA completely preempts certain state law claims as set forth below. Therefore, the State Court Action may be removed to this Court because it arises under the laws of the United States.

19. The Complaint alleges that Sheridan "is a physician management organization" that rendered healthcare services to the Defendants' health plan members.[6] Among its pled causes of action, Sheridan "seeks damages for contractual breaches" of a Hospital Based Physician Group Agreement ("HBP Agreement") for medical services Sheridan provided to Aetna members prior to the agreement's termination on March 25, 2015.[7] Sheridan is also seeking damages in connection with medical services Sheridan provided after the termination of the HBP Agreement pursuant to an "implied" contract purportedly formed pursuant to a continuing offer letter Sheridan sent to Aetna.[8]

20. Most importantly, Sheridan is seeking to recover under an unjust enrichment claim, **which has <u>no</u> connection to <u>any</u> contract**. In support of this cause of action, Sheridan alleges that, separate and apart from any contract, "Aetna has failed to pay the reasonable value of the benefit conferred, in this case the medical services provided, in that Aetna underpaid Sheridan's claims and reimbursed Sheridan at far below its usual and customary charges and below the reasonable value of the services provided."[9] Most of the members whose medical services and medical claims are at issue in this dispute were covered under employee benefits plans governed by ERISA.

21. Regardless of the theory of liability, the October 29 Letter and November 11 Letter make clear that Sheridan is, in fact, seeking damages for medical claims that were denied in whole, or in part, based upon coverage terms of the respective member's ERISA plan. Sheridan is not entitled to payment for its medical services under the HBP Agreement, or any

---

[6] *See* Complaint, Attachment 1 at ¶¶ 15, 23, 31.

[7] *Id*. at ¶ 3.

[8] *Id*.

[9] *Id*. at ¶ 97.

"implied" contract, or any non-contract claim if the services are not covered under the member's plan. For non-covered medical claims, Sheridan is seeking unpaid benefits allegedly owed under the members' respective ERISA plans and is therefore challenging Aetna's coverage determinations as the ERISA claims administrator for those plans.

22. With respect to the denied medical claims at issue, therefore, Sheridan is necessarily bringing a claim within the scope of ERISA (rather than state contract law) under controlling Eleventh Circuit law. Claims about "wrongfully denied benefits" relate "directly to the coverage afforded by the ERISA plans," and are completely preempted. *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1304-05 (11th Cir. 2010) (holding that providers' action alleging that insurer failed to pay healthcare providers at contracted rates was subject to federal jurisdiction); *see Conn. State Dental Ass'n*, 591 F.3d at 1350–53 (11th Cir. 2009) (holding that the providers' claims were completely preempted by ERISA's remedies provision, where the providers claimed the administrator improperly paid them below their contracted rates, refused to pay claims for "medically necessary" services, or "systematically" reduced providers' "reimbursement for medically necessary services").

23. Furthermore, both before and after the termination of the HBP Agreement, Sheridan's only entitlement to payment for covered medical services provided to Aetna members required an assignment of medical benefits from the members. Sheridan did, in fact, submit its medical claims to Aetna pursuant to assignments of benefits payable under the members' various ERISA plans.[10] As an assignee of the patients' rights to payment of any medical benefits available under these ERISA plans, Sheridan had standing and could have brought its claims complaining about Aetna's coverage determinations under the relevant plans under the civil

---

[10] *See, e.g.*, Case No. 0:15-cv-62590-BB, CM/ECF No. 41-1 (showing Sheridan's submission of claims for benefits via assignments from the patients).

enforcement provisions of ERISA. Sheridan's claims for unpaid benefits in this lawsuit, especially its claims for unjust enrichment, are therefore not based on any duty independent of ERISA or the ERISA plans' respective terms. Hence, Sheridan's state law claims are completely preempted by ERISA's civil enforcement scheme codified at 29 U.S.C. § 1132(a). *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209-11 (2004); *Borrero*, 610 F.3d at 1304.

24. The Supreme Court's test for complete preemption under ERISA specifically provides that a state law cause of action falls within the scope of section 502(a) and is completely preempted by ERISA if (1) the plaintiff, at some point in time, **could have** brought the claim under section 502(a), and (2) there is no other legal duty independent of ERISA or the plan's terms that is implicated by a defendant's actions. *Davila*, 542 U.S. at 201.

25. The first prong of the *Davila* test is satisfied here because it is well-established that state law causes of action for improper denial of claims for ERISA plan benefits fall within the scope of section 502(a) of ERISA.[11] As reflected by Sheridan's counsel's letters of October 26 and November 11, Sheridan has emphatically stated that it is disputing the denial of a substantial number of ERISA-governed medical claims and is seeking damages from Defendants for such denials.

26. The second prong of the *Davila* test is also met here because Sheridan's claims do not "implicate legal duties independent of those imposed by ERISA or an ERISA plan's terms."[12] The Eleventh Circuit Court of Appeals has repeatedly held that any complaint from an assignee-provider concerning a denial of benefits, no matter how artfully pled, precludes a wholly

---

[11] *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56-57 (1987); 29 U.S.C. § 1132(a)(1)(B) (allowing participants and beneficiaries to seek monetary, injunctive and declaratory relief concerning their entitlement to benefits).

[12] *See Borrero v*, 610 F.3d at 1304 (citing *Davila*, 542 U.S. at 210).

"independent duty" and thus supports removal to federal court.[13]  This specifically includes Sheridan's unjust enrichment claim, which ***is not based on any independent legal duty*** imposed apart from the patients' respective ERISA plans.  On these bases, Defendants properly remove Sheridan's case to this Court.

27.  **Notice Filed in the State Court**.  Promptly after filing this Second Notice of Removal, written notice thereof will be given to Sheridan and a copy of this Second Notice of Removal will be filed with the Clerk of Broward County, Florida, as provided by law.  A true and correct copy of the Notice being filed with the Clerk of Broward County, Florida is attached hereto as Attachment 7.

WHEREFORE, Defendants pray that the State Court Action be removed to the United States District Court for the Southern District of Florida.

Respectfully submitted,

| OF COUNSEL: | BY: *s/ Richard P. Hermann* |
|---|---|
| | RICHARD P. HERMANN, II, ESQ |
| SAMUEL A. DANON | Florida Bar No. 110019 |
| Florida Bar No. 892671 | SHAPIRO, BLASI, WASSERMAN & |
| HUNTON ANDREWS KURTH LLP | HERMANN, P.A. |
| 1111 Brickell Avenue, Suite 2500 | 7777 Glades Road, Suite 400 |
| Miami, FL 33131 | Boca Raton, Florida 33434 |
| Telephone:  (305) 810-2500 | Telephone:  (561) 477-7800 |
| Facsimile:  (305) 810-2460 | Facsimile:   (561) 477-7722 |
| Email:  sdanon@huntonak.com | E-Mail: rhermann@sbwh.law |
| | **ATTORNEY-IN-CHARGE FOR DEFENDANTS AETNA HEALTH INC., AETNA LIFE INSURANCE COMPANY, COVENTRY HEALTH AND LIFE INSURANCE COMPANY, COVENTRY HEALTH CARE OF FLORIDA, INC., COVENTRY HEALTH PLAN OF FLORIDA, INC., AND FIRST HEALTH LIFE AND HEALTH INSURANCE COMPANY** |

---

[13] *See Conn. State Dental Ass'n,* 591 F.3d 1337 at 1351-53; *Borrero*, 610 F.3d at 1304-05.

## CERTIFICATE OF SERVICE

      I hereby certify that on November 16, 2018, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Florida, using the electronic case filing system of the Court. I also certify that true and correct copies have also been served on all counsel of record via E-Mail, this 16th day of November, 2018.

                */s/ Richard P. Hermann*
                Richard P. Hermann, II